UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PAUL IZZO,
    Plaintiff,

v.

FREEDOM GRAPHICS SYSTEMS, INC.,
    Defendant.

No. 3:15-cv-602 (SRU)

### RULING AND ORDER

On April 24, 2015, the plaintiff, Paul Izzo, filed a complaint against the defendant, Freedom Graphic Systems, Inc. ("FGS"), alleging that FGS had breached its employment contract with Izzo by failing to allow him to contact certain sales accounts and by failing to pay rent on his office space. *See* Compl. (doc. 1); Am. Compl. (doc. 20). On December 15, 2015, having converted FGS' motion to dismiss the complaint into a motion for summary judgment, I held a hearing on that motion and granted summary judgment for FGS. (doc. 35) On January 12, 2016, Izzo filed a motion for reconsideration. (doc. 39)

The standard for granting motions for reconsideration is strict; motions for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Motions for reconsideration will not be granted where the party merely seeks to relitigate an issue that has already been decided. *Id.* The three major grounds for granting a motion for reconsideration in the Second Circuit are: (1) an intervening change of controlling law, (2) the availability of new evidence, or (3) the need to correct a clear error or prevent manifest injustice. *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245,

1255 (2d Cir. 1992) (citing 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478). Izzo has not met any of those grounds.

By an offer letter dated March 16, 2010 and executed the following day, FGS hired Izzo to act as "Director of National Strategic Accounts." Def.'s Mot. to Dismiss Br., Ex. A; Am. Compl., Ex. 1 [hereinafter "Agreement"].[1] The agreement did not expressly state whether Izzo was an at-will employee or had been hired for a particular term. It did, however, make provisions for various termination scenarios: for instance, it stated that if Izzo was terminated for any reason other than "Willful Misconduct" in the first six months, he would be entitled to six months of severance payments, and if he was so terminated in the second six-month period, he would be entitled to three months of severance payments. *Id.* at ¶ 1. If Izzo was terminated after twelve months, he would not be entitled to receive any severance payments. *Id.*

Thus, according to the terms of the agreement, Izzo was an at-will employee of FGS—he was hired for an indefinite term and "'[a]s a general rule, contracts of permanent employment, or for an indefinite term, are terminable at will' in Connecticut." *Grunberg v. Quest Diagnostics, Inc.*, No. CIV.A. 3:05-CV-1201V, 2008 WL 323940, at *10 (D. Conn. Feb. 5, 2008) (quoting *D'Ulisse–Cupo v. Board of Directors of Notre Dame High School,* 520 A.2d 217 (Conn. 1987)). And, as I observed in the December 15 hearing, when "the entire contract is terminable at will, [the employer can] surely change its terms in accordance with the needs of the company without breaching the agreement." *Bessemer Trust Co. v. Branin*, 498 F. Supp. 2d 632, 637 (S.D.N.Y. 2007), *aff'd,* 618 F.3d 76 (2d Cir. 2010). Certainly, the employer can change an at-will employee's responsibilities without breaching the agreement, even if it might not be able to change its obligations to the employee.

---

[1] There are different notations on those two versions of the contract. The notations do not appear to be at issue here, so I will generally cite to the Defendant's version.

Izzo now apparently concedes that his employment contract was at-will, but argues that the "Account Assignment Responsibilities" list, Agreement at ¶ 5 (the "Appendix"),[2] effectively constitutes an *additional* agreement ensuring that he could call on specified clients during the entire term of his at-will employment. He further asserts that whether the Appendix constitutes an additional contract is a question of fact that must be decided by a jury. But, as Izzo also concedes in his brief, "where . . . there is clear and definitive contract language, the scope and meaning of that language is not a question of fact but a question of law." *Antonino v. Johnson*, 113 Conn. App. 72, 75 (2009) (alterations in original, citation omitted). In the present case, neither the Agreement nor the Appendix contain ambiguous terms suggesting that the Appendix was intended to provide additional protections to Izzo during the duration of his at-will employment.

The Appendix does include an "approximate yearly spend" column that Izzo suggests served as an inducement to take the position on the basis of a certain level of commissions. By referring to the Appendix as a list of "Responsibilities" in both the Agreement and on the Appendix itself, however, the Agreement makes clear that the Appendix listed obligations Izzo was required to perform for the benefit of the FGS, rather than conferring a right or benefit on Izzo. Moreover, the Appendix is conspicuously dated March 23, 2010, indicating that it was subject to change.[3]

---

[2] Exhibit 1 to the Amended Complaint includes that Appendix (doc. 20-1).
[3] To the extent that Izzo is in fact asserting a wage claim for failure to pay contractually obligated commissions or a fraudulent inducement claim, as FGS pointed out in its memorandum in support of its motion to dismiss, both of those claims would be barred by the respective statute of limitations. *See* Conn. Gen. Stat. § 52-596 (two-year statute of limitations for wage claims); Conn. Gen. Stat. § 52-577 (three-year statute of limitations for tort claims, including fraudulent inducement).

Thus, Izzo has failed to provide any binding authority or new evidence that would require me to call into question my ruling on the motion for summary judgment. Accordingly, his motion for reconsideration is **denied**. The defendant's request for costs (doc. 40) is also **denied**.

So ordered.

Dated at Bridgeport, Connecticut, this 20th day of September 2016.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge